# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| THOMAS JONES, | ) |
| Plaintiff, | ) |
| v. | ) No. 08 C 3327 |
| GRAPHIC ARTS FINISHING COMPANY, *et al.*, | ) Wayne R. Andersen |
| | ) District Judge |
| Defendants. | ) |

## MEMORANDUM, OPINION AND ORDER

This case is before the court on the motion of defendants Graphic Arts Finishing Company, Inc. ("Graphic Arts"), Mary E. Quinn, as Trustee under The Mary Ellen Quinn Declaration of Trust ("Mary E. Quinn"), and Robert E. Quinn, as Trustee under The Robert E. Quinn Declaration of Trust ("Robert E. Quinn") to grant summary judgment in their favor and against plaintiff Thomas Jones ("Jones") pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, defendants' motion for summary judgment [32] is granted in part and denied in part.

## BACKGROUND

Jones' accident occurred on May 3, 2006 at approximately 9:30 a.m. at the Graphic Arts facility located at 1990 N. Mannheim Road in Melrose Park, Illinois. (Defendants' Statement of Uncontested Material Facts ("SOF"), ¶ 27). Jones is currently 65 years old and, at the time of the accident, was employed as a truck driver. (SOF, ¶ 28). Jones had never been to Graphic Arts' facility before the day of the accident, when he was making a delivery to Graphic Arts. (SOF, ¶ 30).

When Jones arrived at the Graphic Arts' facility, he pulled up on a side street, put on his flashers, and walked over to the loading dock to see how much room he would have to pull his trailer into the dock. (SOF, ¶ 32). Jones walked through the center door of the loading dock and looked around but did not see anyone so he went back out to his truck. (SOF, ¶ 36).

Jones got back in his tractor and reversed the trailer into the empty right center bay. (SOF, ¶ 44). Jones stopped approximately 8-10 feet away from the fixed dock plate with the front part of his trailer still outside the bay area. (SOF, ¶46). Jones got out of his cab to walk back to the dock plate to see if he was lined up properly or if he had to make adjustments. (SOF, 47). At that point, Jones' trailer was adjacent to a yellow post in the bay area and the wall of the trailer was approximately 30 inches from the post. (SOF, ¶ 48).

Jones exited his cab, walked around the front of his trailer, and walked down the passenger side of the trailer to the back of the trailer. (SOF, ¶ 51). Once there, he saw how much he needed to back up, and then started to walk up the driver's side to get back into his cab. (SOF, ¶ 51). Jones walked on the driver's side of his truck towards the cab and about one to two feet before reaching the yellow post, Jones turned towards his trailer in order to "squeeze" by the post and his trailer. (SOF, ¶ 56).

Jones stepped into an open drainage pit with his left foot, causing his to lose his balance, pitching him forward and striking the yellow post with his left rib area and hyper-extending his right arm. (SOF, ¶ 57). The drainage system runs east to west from one side of the loading dock to the other side. (SOF, ¶ 13). The metal grates are made up of sections that are approximately 3 feet long by one foot wide and are lined up end to end with a pit underneath that is 9 to 10 inches deep that collects debris such as small pieces of garbage and leaves. (SOF, ¶ 14). Jones did not see the missing grate anywhere in the vicinity and does not know where the missing grate

2

was and never saw it at any point. (SOF, ¶ 59). In addition, Jones has no knowledge as to how long the grate had been missing. (SOF, ¶ 60). The grates on either side of the missing grate were in place in the drainage channel. (SOF, ¶ 61).

Mary E. Quinn and Robert E. Quinn have owned the Graphic Arts building at 1990 N. Mannheim Road since 1987. (SOF, ¶ 7). Mary E. Quinn and Robert E. Quinn lease the building to Graphic Arts pursuant to a lease agreement. (SOF, ¶ 8). Under the lease agreement, Graphic Arts is responsible for repairing and maintaining the property. (SOF, ¶ 9). Mary E. Quinn and Robert E. Quinn do not perform any repairs or maintenance at the building. (SOF, ¶ 10). Mary Pat Quinn-Headley is a co-owner of Graphic Arts and has worked at the facility since 1987. (SOF, ¶ 11).

Bill Lodding ("Lodding") has worked at Graphic Arts for 19 years as the maintenance supervisor and is responsible for all repair and maintenance jobs at the facility. (SOF, ¶ 16). Lodding cleans the drainage channels 2-4 times a year, depending on the amount of leaves and garbage. Although Lodding does not have a set date that he cleans them, he typically cleans them at least once in the spring and once in the fall. (Dep., 25). In addition, although he has no knowledge as to when he cleaned the drainage systems prior to or after May 3, 2006, he agrees that around May 1st of each year is probably when he cleans them. (SOF, ¶ 17; Dep., 26). No one other than Lodding has cleaned the drains or removed the metal grates in the past 19 years. (SOF, ¶ 18). In the 22 years Graphic Arts has been a the facility, no one at Graphic Arts has any knowledge of any missing grates and no one has ever reported seeing any of the grates completely missing. (SOF, ¶ 68).

Based upon the accident described above, Jones has asserted a negligence claim against Mary E. Quinn, Robert E. Quinn, and Graphic Arts. On September 2, 2009, defendants filed a

3

motion for summary judgment for all of Jones' claims. This motion been fully briefed by both parties, and the court has considered all documents submitted in consideration of the defendants' motion. We now turn to that motion.

## STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The nonmoving party is tasked with presenting specific, competent evidence to rebut the motion for summary judgment. *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004). In determining whether a genuine issue of material fact exists, the Court construes the evidence in the light most favorable to the non-moving party, and all "reasonable and justifiable inferences [are drawn] in that party's favor." *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999).

## DISCUSSION

**I.   Negligence Claims against Mary E. Quinn and Robert E. Quinn**

In Illinois, a landlord is not liable for injuries caused by dangerous conditions on premises leased to a tenant and under the tenant's control. *Vesey v. Chicago Housing Authority*, 145 Ill.2d 404, 583 N.E.2d 538 (1991). Therefore, a lessor who relinquishes control of property to a lessee owes no duty to a third party who is injured while on the leased property. The landlord's liability for the leased premises is extinguished because the lessee temporarily

becomes both owner and occupier, subject to all of the responsibilities of one in possession to those who enter the land and those outside of its boundaries. *Rowe v. State Bank of Lombard*, 125 Ill.2d 203, 531 N.E.2d 1358 (1988).

In the present case, both Mary E. Quinn and Robert E. Quinn were lessors of the property at 1990 N. Mannheim Road. On the date of the accident, May 3, 2006, Mary E. Quinn and Robert E. Quinn were leasing the building to Graphic Arts. Pursuant to the lease agreement, Graphic Arts is responsible for repairing and maintaining the property. As a result, Mary E. Quinn and Robert E. Quinn did not owe the plaintiff a duty to maintain their property in a reasonably safe condition, which the plaintiff conceded in his response to the defendant's motion for summary judgment. Thus, defendants' motion for summary judgment as to the claims against Mary E. Quinn and Robert E. Quinn is granted.

## II.     Negligence Claims against Graphic Arts

A business owner owes all business invitees on his or her premises a duty to exercise ordinary care in maintaining the premises in a reasonably safe condition. *Olinger v. The Great Atlantic and Pacific Tea Company*, 21 Ill.2d 469, 173 N.E.2d 443 (1961) (citing *Geraghty v. Burr Oak Lanes, Inc.*, 5 Ill.2d 153). When a business invitee is injured by a dangerous condition on the premises, liability may be imposed in three circumstances: (1) if the dangerous condition was created by the proprietor or his servants; (2) if the proprietor or his servant knew of the dangerous condition, regardless of how the dangerous condition was created; or (3) if the dangerous condition was there a sufficient length of time so that in the exercise of ordinary care its presence should have been discovered, regardless of how the dangerous condition was created. *Olinger v. The Great Atlantic and Pacific Tea Company*, 21 Ill.2d 469, 173 N.E.2d 443 (1961) (citing *Davis v. South Side Elevated Railroad Co.*, 292 Ill. 378 (1920)). In the present

case, there is neither evidence that Graphic Arts knew of the missing drainage grate nor evidence regarding how long the drainage grate was missing. However, the fact that the grate cover was missing raises a question for the jury as to whether its absence should have put Graphic Arts on constructive notice of the alleged dangerous condition.

If there is direct evidence that the proprietor or his servants created the dangerous condition, then the issue of negligence is a question of fact for the jury. *Olinger v. The Great Atlantic and Pacific Tea Company*, 21 Ill.2d 469, 173 N.E.2d 443 (1961). However, when, as in this case, there is no direct evidence as to how the dangerous condition was created, the question becomes how much circumstantial evidence is sufficient to sustain a reasonable inference that the dangerous condition was created through the act of the defendant or one of his servants. *Id.*

In cases in which the dangerous condition is unrelated to the proprietor's operations and "there is no proof of actual or constructive notice, the defendant is entitled to a directed verdict, since there is no evidence from which it could reasonably be inferred that the dangerous condition was more likely to have been created by the defendant's servants than by third persons." *Id.* at 475. Similarly, even if there is proof that the dangerous condition is related to the defendant's business, but no evidence is offered other than the presence of the dangerous condition and the occurrence of the injury, the defendant is entitled to a directed verdict, because such evidence is insufficient to support the necessary inference. *Jones v. Kroger Grocery and Baking Co.*, 273 Ill.App. 183 (1933).

However, a case in which, "in addition to the fact that the dangerous condition was a related to the defendants operations, the plaintiff offers some further evidence, direct or circumstantial, however slight, such as the location of the dangerous condition or the business practices of the defendant, from which it could be inferred that it was more likely that defendant

or his servants, rather than a third person, created the dangerous condition, courts have generally allowed the negligence issue go to the jury, without requiring defendant's knowledge or constructive notice." *Donoho v. O'Connell's, Inc.*, 13 Ill.2d 113, 122 (1958).

In the instant case, the dangerous condition was related to the Graphic Arts' business. The grate cover was on the Graphic Arts property and was used to provide drainage to the docking area of the facility. The question then turns to whether or not Jones has provided some evidence, however slight, from which it could be inferred that it was more likely that Graphic Arts, rather than a third person, created the dangerous condition.

In *Thompson v. Economy Super Marts, Inc.*, the court granted the defendant's motion for judgment notwithstanding the verdict on a negligence claim to recover damages for personal injuries sustained when the plaintiff slipped on a lettuce leaf in an aisle of the defendant's grocery store. *Thompson v. Economy Super Marts, Inc.*, 221 Ill. App. 3d 263, 581 N.E.2d 885 (1991). In that case, the plaintiff slipped and fell on a lettuce leaf and water that was on the floor of the produce aisle in the defendant's grocery store. *Id.* The court found no evidence showing that it was more likely that the defendant's servants, rather than a customer, had dropped the lettuce leaf on the ground. *Id.* In addition, the court also noted that the plaintiff had failed to provide evidence that the defendant's business practice created any special hazard. *Id.* at 266.

In *Donoho v. O'Connell's, Inc.*, the plaintiff was injured when she slipped and fell in the defendant's restaurant. *Donoho,* 13 Ill.2d 113, 148 N.E.2d 434 (1958). Evidence was presented showing that a busboy had cleared the table near where the plaintiff fell, that as a result of the bus boy's practice of clearing tables food particles did at times fall to the floor, and that a grilled onion and grease smear were found near where the plaintiff fell. *Id.* The court held that from this circumstantial evidence, it could be reasonably inferred that it was more likely that the onion

ring was on the floor through the acts of the busboy rather than through the acts of any customer. *Id.* In addition, the court emphasized that "the query is not whether it was also possible that a customer could have dropped the onion ring, but whether the evidence makes it more probable that [the] defendant or his servants dropped it." *Id.* at 125.

The evidence presented in this case creates a genuine issue of material fact as to whether a Graphic Arts' employee created the dangerous condition. In both *Thompson* and *Donoho*, the location of the injury was a highly trafficked, public area. In *Thompson*, this location was a supermarket aisle, which was open to the general public and had customers walking up and down the aisles touching and moving the various products sold by the store. In *Donoho*, the accident occurred in the eating area of a public restaurant. In contrast, the Graphic Arts loading dock area is not open to the general public and there is no evidence that truck drivers or other third persons are constantly touching or moving the grates, thus reducing the likelihood that a third person created the dangerous condition. Similar to *Donoho*, the evidence in the present case establishes the existence of a business practice related to the dangerous condition. The evidence shows that over the past nineteen years, the only time that a grate has ever been removed in the Graphic Arts facility is when the drainage pit gets cleaned. Further, the evidence presented demonstrates that Bill Lodding, Graphic Arts' maintenance supervisor, is the only person who has ever cleaned the drainage pit over the past nineteen years. In addition, the evidence shows that the drainage pits are typically cleaned once in the spring and once in the fall. While Lodding does not have a set date each spring that he cleans the pits, nor does he remember the date he cleaned them in 2006, he does admit that the week of May 1st is about the time each year that he cleans the pits. Jones' injury in the present case occurred on May 3rd of 2006. These facts provide sufficient evidence from which it could be inferred that it was more

likely that Graphic Arts, rather than a third person, created the dangerous condition, the open drainage pit, which caused Jones' injury.

As a result, there is a genuine issue of material fact as to whether it is more likely than not that a Graphic Arts employee removed the grate, thereby creating the dangerous condition. This issue of material fact is one that the jury, not the court, must decide.

Generally, business owners are not required to foresee and protect against injuries resulting from dangerous conditions that are open and obvious. *Bucheleres v. Chicago Park Dist.*, 171 Ill.2d 435, 448, 665 N.E.2d 826 (1996). A dangerous condition is considered open and obvious if "both the condition and the risk are apparent to and would be recognized by a reasonable [person], in the position of the visitor, exercising ordinary perception, intelligence, and judgment." *Prostran v. City of Chicago*, 349 Ill.App.3d 81, 90, 811 N.E.2d 364 (2004). The determination of whether a danger is open and obvious can be decided as a matter of law where reasonable minds could not disagree, and is based upon the objective knowledge of a reasonable person confronting the same condition. *Sandoval v. City of Chicago*, 357 Ill.App.3d 1023, 1028 (1st Dist. 2005).

In the present case, a question of fact exists as to whether the dangerous condition, the missing drainage grate, was open and obvious. During Jones' first trip into and out of the loading dock area, he walked through the center door, not over the actual open drainage pit that later caused his fall. In addition, Jones states that he did not see the missing grate and does not admit that it was open or obvious. However, there is some evidence that a person is capable of seeing the drainage grates when walking into and out of the docking area of the Graphic Arts facility. Under these circumstances, we find that summary judgment in favor of defendants

based on the alleged open and obvious nature of the condition on the premises would be inappropriate.

CONCLUSION

For all of the reasons set forth in the court's Memorandum, Opinion and Order, defendants' motion for summary judgment [32] is granted as to claims against Mary E. Quinn and Robert E. Quinn and denied as to claims against Graphic Arts. This matter is set for status February 4, 2010.

                                          *Wayne Andersen*
                                          Wayne R. Andersen
                                          United States District Judge

Dated: January 15, 2010